**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES TOWNSEND, ET AL.,** | ) | **CASE NO.1:18CV2884** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **STAND UP MANAGEMENT, INC.,ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs' Motion for Class Certification and Court Authorized Notice (ECF # 9), the Motion of Defendants DePere Concepts, Inc., Stand Up Management, Inc., Cole Heeg and Brian Tidwell to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Compel Arbitration and Stay all Proceedings (ECF # 16) and Plaintiffs' Amended Motion for Evidentiary Hearing or Trial. (ECF # 26). For the following reasons, the Court denies, subject to refiling, Plaintiffs' Motion for Class Certification; grants, in part, Defendants' Motion to Compel Arbitration and orders Plaintiffs' to arbitrate their claims against Defendants and denies Plaintiffs' Motion for Evidentiary Hearing.

On December 14, 2018, Plaintiffs James Townsend, Florzell Pippen and Dione Christian filed their Collective and Class Action Complaint against Defendants Stand Up Management, Inc. ("Stand Up"), DePere Concepts, Inc. ("DePere"), Exelon Generation Company, LLC. d/b/a as Constellation Energy ("Constellation"), Brian Tidwell ("Tidwell") and Cole Heeg ("Heeg") alleging violations of the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards Act ("OMFWSA") and Ohio Revised Code 4111 *et seq*. and the Ohio Constitution ("state law claims"). Plaintiffs assert that Defendants market and sell natural gas and/or electricity to residential and commercial customers. Plaintiffs were employed by Defendants to go door-to-door to market Defendants energy services to potential customers. Plaintiffs were managed and supervised by Defendants DePere, Stand Up, Heeg and Tidwell. Plaintiffs did not make sales as part of their duties. Plaintiffs were required to work more than 40 hours per week but were not paid at the statutory rate of one and one-half times their regular rate of pay for hours worked in excess of 40 hours per week. Plaintiffs allege Defendants are all joint employers of Plaintiffs and Plaintiffs bring their claims on behalf of themselves and other similarly situated employees of Defendants.

On January 24, 2019, Plaintiffs moved for conditional certification and on February 15, 2019, Defendants filed their Motion to Dismiss. On May 1, 2019, Plaintiffs filed their Amended Motion for Evidentiary Hearing or Trial asking the Court for a hearing to determine what, if any, claims should be arbitrated and which Defendants can enforce the arbitration agreements.

According to Defendants, all the Plaintiffs signed arbitration agreements requiring all disputes be submitted to final and binding arbitration. Furthermore, the arbitration

agreements waive any right to bring an action collectively. These matter are now ripe for ruling.

**<u>Defendants' Motion to Dismiss</u>**

According to Defendants, the Court lacks subject matter jurisdiction over Plaintiffs' claims because each Plaintiff executed a valid agreement with Defendants to resolve disputes through final and binding arbitration. These agreements further waived any rights Plaintiffs had to assert their claims on a class or collective basis.

Plaintiffs oppose the Motion, contending that the arbitration agreements only apply between one discrete Plaintiff and one Defendant. For instance, Plaintiffs Townsend and Pippen worked for Stand Up and Plaintiff Christian worked for DePere. Thus, even if the arbitration agreements are enforceable, they would only be enforceable as to the claims between the contracting parties. In addition, on the agreement purportedly signed by Townsend the name of the employer is blank, therefore, Townsend cannot be compelled to arbitrate his claims due to a lack of an enforceable agreement.

Plaintiffs further assert that procedurally it is proper to first determine whether Plaintiffs have met the standard for conditional certification, then send out notice to potential collective action members and, once all opt-ins have appeared, determine the arbitration issues.

## **<u>LAW AND ANALYSIS</u>**

Defendants move the Court to Dismiss under Fed. R. Civ. P. 12(b)1) or 12(b)(6) or alternatively to compel arbitration. The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4. The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). If the "validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In order to meet this burden, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth*, 288 F.3d at 889.

"As plaintiffs are opposing arbitration, they must offer "'concrete evidence from which a reasonable juror could' find that this matter should not be compelled to arbitration." *Mounts v. Midland Funding LLC,* 257 F. Supp. 3d 930, 936 (E.D. Tenn. 2017) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).

Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2003).

In determining whether to grant motions to dismiss or stay proceedings and compel arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress

intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000). Ohio law favors the arbitration of disputes. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). An agreement to arbitrate will be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185 (2006).

"The Supreme Court has repeatedly held that contracts to arbitrate federal statutory claims are enforceable unless 'Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). Moreover, the United States Supreme Court has repeatedly emphasized its holding that an arbitration forum adequately preserves statutory rights and may satisfactorily adjudicate statutory claims. *Circuit City*, 532 U.S. at 122-23; *Green Tree Fin. Corp.*, 531 U.S. at 90; *Gilmer*, 500 U.S. at 35.

**<u>Agreed to Arbitrate</u>**

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hergenreder v. Bickford Senior Living Group, LLC,* 656 F.3d 411, 416 (6th Cir. 2011). "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Id.* Applying Ohio law, "a party cannot be required to submit to arbitration any

6

dispute which he has not agreed so to submit." *Dantz v. American Apple Group, LLC.* 123 Fed.Appx. 702, 707, 2005 WL 465253, 4 (6th Cir, 2005). "For a valid contract to exist, there must be an offer on one side, an acceptance on the other side, and mutual assent between the parties with regard to the consideration for the bargain." *Tidewater Fin. Co. v. Cowns* 197 Ohio App.3d 548, 552, 968 N.E.2d 59, 63 (Ohio App. 1 Dist.,2011). The party asserting the existence of a contract bears the burden of demonstrating its existence by a preponderance of the evidence. *Id.* ("We are mindful that Tidewater bore the burden of proving the elements of its claim by a preponderance of the evidence.")

Mutual assent "ordinarily takes the form of an *offer* or proposal by one party followed by an *acceptance* by the other party or parties." *Dantz,* 123 Fed. Appx. At 707 citing *Restatement (Second) of Contracts* § 22 1981.

"Under Ohio law, 'to constitute consideration, a performance or a return promise must be bargained for.'" *Id.* at 708. "A promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisor in exchange for that promise. *Rupert v. Macy's, Inc.*, 2010 WL 2232305, 7 (N.D.Ohio,2010).

In this case, the Court notes Defendants' Motion "would more properly have been brought under Rule 12(b)(6), because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Moore v. Ferrellgas, Inc.,* 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008) citing *Liveware Publishing, Inc. v. Best Software, Inc.,* 252 F.Supp.2d 74, 78 (D.Del.2003); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson,* 953 F.2d 44, 45 n. 1 (3d Cir.1991). "In that vein, this court has held that a party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the

7

party 'has failed to state a claim,' meaning that a motion to dismiss on such grounds is 'properly construed as a motion ... under Rule 12(b)(6).'" *Knight v. Idea Buyer, LLC,* 723 F. App'x 300, 301 (6th Cir. 2018) quoting *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014). "A motion to dismiss pursuant to an arbitration agreement should therefore be construed as a Rule 12(b)(6) motion even if it is mislabeled as a Rule 12(b)(1) motion." *Knight*, 723 F. App'x. at 301.

Defendants move to compel arbitration and have produced arbitration agreements signed by all named Plaintiffs, including those who consented to join the suit after the filing of the Complaint. These arbitration agreements read as follows:

> MANDATORY ARBITRATION OF ALL CLAIMS POLICY
>
> As an expeditious and economical way to settle employment disputes without the need to go through the courts, _____ (Employer) and Employee agree to resolve disputes which may arise between them through binding arbitration under this Mandatory Arbitration of All Claims Policy ("Policy")...
>
> Employer and Employee agree that all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of Employee's employment with Employer; and which may have occurred prior to or after entering into this arbitration agreement (other than claims Employee may have for workers' compensation, unemployment insurance benefits, or claims which by statute are not arbitrable), shall be submitted to binding arbitration. Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, in their capacity as such, whether an individual or entity.

The agreement further waives any right to a class, collective or representative action and conditions accepting employment or continuing employment upon agreement to be bound by the terms of the agreement. According to Defendants, this broad language encompasses all Plaintiffs' claims. Defendants produce the affidavits of Heeg and Tidwell attesting they are

officers of Defendants DePere and Stand Up respectively, and as such, are entitled to enforce the arbitration clauses per the plain language therein.

Plaintiffs do not contest that Heeg and Tidwell, as officers of DePere and Tidwell, are covered by the terms of the arbitration agreements and can compel arbitration on any claims arising out of Plaintiffs' employment with these companies. However, Plaintiffs contend that all the claims arising out of their employment relationship are not subject to arbitration because each Plaintiff was not a signatory to arbitration agreements with each Defendant. So, for example, while Plaintiff Pippen signed an arbitration agreement with Defendant DePere, Plaintiffs offer Pippen's paystubs showing he was paid by Stand Up. Therefore, because Defendants were joint employers of Plaintiffs, the existence of an arbitration agreement between one plaintiff and one defendant does not mean the Court can compel arbitration of that plaintiff's claims against a co-defendant with whom he did not sign an arbitration agreement.

Defendants respond that Plaintiffs must be compelled to arbitrate all their claims against all the movants because Plaintiffs allege they were employees of all Defendants as joint employers. Therefore, they are estopped from litigating in court their claims against Defendants with whom they have no arbitration agreement because they seek to hold all Defendants liable under a joint employer theory.

Plaintiffs further allege that even if the arbitration agreements are enforceable, the Court cannot compel Plaintiff Townsend to arbitrate his claims because his arbitration agreement fails to identify his employer. Townsend signed the arbitration agreement but the employer's name is left blank. Thus, according to Townsend, it presents an ambiguity which

9

must be construed against the drafter - i.e. Defendants, and he must be permitted to proceed with his claims in the district court.

## LAW AND ANALYSIS

Upon consideration of the motions, oppositions, briefs and evidence for the limited purpose of establishing arbitrability, the Court holds that the arbitration agreements are valid and enforceable. When considering whether the arbitration agreements are enforceable, the Court begins its analysis by noting that Plaintiffs do not challenge any of the agreements as unconscionable, were obtained by fraud, nor do they allege they were required to sign the agreements under duress. In fact, with the exception of Townsend, none challenge the fact that they signed arbitration agreements with at least one Defendant. Thus, none of the Plaintiffs, including the opt-in Plaintiffs, have alleged or asserted any plausible challenge to the enforceability of the arbitration agreements, at least with respect to the particular Defendant employer with whom they agreed to arbitrate their disputes.

Townsend alone challenges his purported obligation to arbitrate because the agreement he signed does not contain the name of his employer. He does not dispute that he did, in fact, sign the arbitration agreement but instead contends it cannot be enforced against him as it is ambiguous and Ohio law requires that any ambiguity must be construed against the drafter.

"[I]f a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 474 N.E.2d 271. "The parties may rely on evidence extrinsic to the contract to explain what the

10

parties intended the missing term to state." *McGonagle v. Somerset Gas Transm. Co.*, 2011-Ohio-5768, ¶ 18 citing *Williams v. Spitzer Autoworld Canton, L.L.C.,* 122 Ohio St.3d 546, 913 N.E.2d 410, 2009–Ohio–3554, ¶ 30.

Here, Townsend's signed arbitration agreement does not identify his employer. The Court would ordinarily allow discovery to determine the employer's identity but because there is no dispute that the employer was Stand Up, no discovery is needed. Plaintiff Townsend specifically alleges in his Complaint that he was employed by Stand Up from October 2017 to September 2018. (Complaint para. 8, 54 and Plaintiffs' Response in Opposition pg. 1). Defendants agree and further submit an affidavit and Townsend's signed receipt of his new hire paperwork with Stand Up demonstrating that Townsend was employed by Stand Up and that Stand Up was the employer with whom Townsend agreed to arbitrate. The arbitration agreement signed by Townsend is dated November 6, 2017. Thus, the identity of the missing employer name in Townsend's arbitration agreement is not a disputed material fact but is acknowledged by all parties to be Stand Up.

Moving next to whether the arbitration agreements are enforceable, Plaintiffs make no such arguments in their opposition brief to Defendants' Motion to Dismiss. However, after briefing was closed on Defendants' Motion, Plaintiffs subsequently moved the Court for en evidentiary hearing or trial on the issue of enforceability. Plaintiffs allege that Defendants failed to produce arbitration agreements for the opt-in Plaintiffs and failed to produce arbitration agreements between all Plaintiffs and all Defendants. Furthermore, Defendants produced paystubs demonstrating that Defendants did not stand in each other's shoes when it came to payment of employees, because Stand Up paid its workers as employees by

withholding taxes while DePere paid its workers as independent contractors via the use of 1099 forms. Because Defendants argue they are not joint employers, Plaintiffs contend the Court should hold an evidentiary hearing on the issue to determine their status as joint or separate and distinct employers.[1]

Defendants respond that Plaintiffs Motion for Evidentiary Hearing or Trial is nothing more than an attempt to file a surreply without leave of Court and should be stricken, because Plaintiffs' Motion was filed nearly two months after Defendants moved to dismiss or compel arbitration. Defendants further argue that Plaintiffs motion is untimely because the Federal Arbitration Act requires that a request for a jury trial on the enforceability of an arbitration agreement must be made within the time to respond to the motion to compel. Plaintiffs did not move until nearly thirty days after the response time to oppose the motion. Therefore, according to Defendants, Plaintiffs' Motion must be denied as untimely. Finally, Defendants contend Plaintiffs have not raised any material issues of fact concerning the enforceability of the agreements and because they allege all Defendants were joint employers, they are estopped from challenging the non-signatory Defendants' motion to compel.

The Court agrees with Defendants that Plaintiffs waived the right to a jury trial on the issue of the validity of the arbitration agreements.

Federal Arbitration Act 9 U.S.C. § 4 states in pertinent part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial

---

[1] Plaintiffs also repeat their arguments attacking the enforceability of Townsend's arbitration agreement with Stand Up, but the Court has already determined that Stand Up was Townsend's employer and that Townsend agreed to arbitrate any disputes with Stand Up arising out of his employment with Stand Up.

thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. ***Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.*** (Emphasis added).

9 U.S.C.A. § 4

According to the plain language of Section 4 as stated above, Plaintiffs were required to make their demand "on or before the return day of the notice of application." Failure to do so results in a waiver.

The Federal Arbitration Act requires that if demand for a jury is made the Court shall refer the matter to a jury for trial. "If the validity of an arbitration agreement is "in issue," the court must hold a trial to resolve the question." *Wallace v. Red Bull Distributing Co.* 958 F.Supp.2d 811, 816 (N.D.Ohio,2013). This requirement is subject to the additional statutory requirement that the defaulting party make such a demand on or before the return day of the notice of application. The FAA does not define the "return day of the notice of application." However, Courts that have considered this issue have determined this to be the return day-i.e. due date for an opposition to a motion for an order to compel arbitration. See *Rush v. Oppenheimer & Co., Inc.,* 638 F. Supp. 872, 876 (S.D N.Y. 1986). See also *Starr Elec. Co., Inc. v. Basic Const. Co.,* 586 F.Supp. 964, 966 (D.C.N.C.,1982). Defendants' filed their Motion on February 15, 2019 and Plaintiffs filed their opposition brief on March 15, 2019. Plaintiffs did not request a jury trial on the validity of the arbitration clause in their opposition brief but waited nearly a month thereafter before requesting a jury trial. By failing to timely request a jury trial on the issue, Plaintiff has waived his right to a jury trial. See *Hamilton*

13

*Life Insurance Co of New York v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2nd Cir. 1969). See also *Rush* and *Starr Electric, supra*.

Plaintiffs have also failed to dispute that the arbitration agreements are valid and enforceable based on ordinary contract theories such as fraud, unconscionability or duress. All Plaintiffs, including those who filed consents, signed arbitration agreements that are enforceable and contain the arbitration clause as cited above. The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26. Here, it is undisputed that each Plaintiff signed an arbitration agreement with at least one Defendant and that they were signed as a condition of employment. The agreements require both Plaintiffs and Defendant employers to arbitrate all their disputes. In the absence of any argument or evidence that the agreements are invalid or unenforceable between the signatories the Court finds them valid and enforceable on their face. Therefore, the Court must consider whether all Plaintiffs must be compelled to arbitrate their claims against all the Defendants.

The arbitration agreements at issue all contain the same broadly worded arbitration clauses requiring "all claims, disputes, controversies or disagreements of any kid whatsoever, arising out of Employee's employment with Employer... shall be submitted to binding arbitration. This clause applies equally to any claims the Employee has against "Employer's employees, officers, directors, agents suppliers and service providers." The Sixth Circuit has expressly held that FLSA claims are not exempt from arbitration. See *Gaffers v. Kelly Servs.,*

*Inc.,* 900 F.3d 293, 296 (6th Cir. 2018) ("And because the FLSA does not "clearly and manifestly" make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written.").

Likewise, Plaintiffs' Ohio state law claims are also subject to arbitration. See *Shakoor v. VXI Glob. Sols., Inc.,* 2017-Ohio-8018, ¶ 17. Because all of the Plaintiffs' state law claims arise out of their employment with Defendants and Defendants' alleged failure to pay overtime as required under statute, all are subject to and non-exempt from arbitration under federal or Ohio law. Thus, all Plaintiffs' claims are subject to mandatory and binding arbitration.

Furthermore, Plaintiffs waived any rights to assert their claims collectively against Defendants. The arbitration agreements read in pertinent part:

NO RIGHT TO JURY TRIAL AND WAIVER OF CLASS ACTION, COLLECTIVE, AND REPRESENTATIVE ACTIONS

> The arbitrator will have no authority to consider a class, collective, or representative action by one or more employees... BY ACCEPTING EMPLOYMENT WITH EMPLOYER, OR CONTINUING TO REMAIN EMPLOYED BY COMPANY, EMPLOYEE AND EMPLOYER ARE EACH GIVING UP HIS/HER/ITS RIGHT TO A JURY TRIAL AND HIS/HER/ITS RIGHT TO PARTICIPATE IN A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION BECAUSE ALL CLAIMS WILL BE RESOLVED EXCLUSIVELY THROUGH ARBITRATION. EMPLOYEE AND EMPLOYER AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER/ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF, REPRESENTATIVE PLAINTIFF EMPLOYEE, SIMILARLY SITUATED EMPLOYEE OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING. NEITHER EMPLOYEE NOR EMPLOYER SHALL BE ENTITLED TO ANY RECOVERY FROM A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION.

"Both federal and Ohio courts have held that an arbitration clause does not authorize class arbitration without an affirmative statement of authority—silence is not enough." *Shakoor*, 2017-Ohio-8018, ¶ 17. As the Sixth Circuit explained, "[t]he [U.S. Supreme] Court has stated that 'it cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator.' ") *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett,* 734 F.3d 594, 598 (6th Cir.2013), quoting *Stolt–Nielsen v. Animalfeeds Internatl. Corp.*, 559 U.S. 662, 685, 130 S.Ct. 1758 (2010). *See also Huffman v. Hilltop Companies*, *LLC*, 747 F.3d 391, 398–399 (6th Cir.2014) ("here the parties' arbitration clause nowhere mentions classwide arbitration. * * * We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually.")

Here, the parties expressly agreed to waive any rights to bring claims arising out of employment disputes collectively. Because parties are free to waive such rights, the Court holds that Plaintiffs' have waived any rights to assert their FLSA and Ohio state law claims on behalf of a class or as a collective action against movants.

In their Complaint, Plaintiffs allege that all Defendants are joint employers of all the Plaintiffs under the FLSA and Ohio law. According to the Complaint, Defendants: operate out of the same office, have the same address and support staff and processes. Defendants share: operational control over the day-to-day functions of Plaintiffs, authority to set rates and methods of compensation, authority to control work schedules and employment conditions of

Plaintiffs, authority and control over employment records and services of Plaintiffs. Plaintiffs further allege Defendants acted directly or indirectly in the interest of each other. Plaintiffs allege they were not paid the statutory rate for hours worked in a given week over forty hours and were sometimes paid less than minimum wage in certain weeks. Plaintiffs allege that with respect to the failures to pay overtime wages and minimum wages in violation of the FLSA and Ohio law, "Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA and Ohio Wage Laws." (Complaint at 69). Plaintiffs do not distinguish between the Defendants, but allege all Defendants engaged in the above acts and violated the FLSA and Ohio wage laws by knowingly, willfully and/or recklessly failing to pay overtime and minimum wages to Plaintiffs. Thus, Plaintiffs clearly contend Defendants acted in concert with the intent to deny Plaintiffs their statutory rights to overtime.

As a district judge within this District held, the Sixth Circuit has approved of the framework set out in *Thomson–CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995). *See Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 629 (6th Cir.2003) which recognized that circuits have applied equitable estoppel to estop a signatory to an arbitration clause from avoiding arbitration with a non-signatory under certain circumstances. See *Liedtke v. Frank,* 437 F. Supp. 2d 696, 698–99 (N.D. Ohio 2006). Courts may apply equitable estoppel to compel arbitration between a signatory and a non-signatory to an arbitration agreement in two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes

17

> the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate [ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

*Id. Quoting MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (internal citations omitted); *accord JLM Indus., Inc. v. Stolt–Nielsen, SA,* 387 F.3d 163, 177 (2d Cir.2004); *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527–28 (5th Cir.2000); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993); *Orcutt v. Kettering Radiologists, Inc.,* 199 F.Supp.2d 746, 752 (S.D.Ohio 2002). See also *I Sports v. IMG Worldwide, Inc.* 157 Ohio App.3d 593, 600 (Ohio App. 2004) ("the second circumstance under which equitable estoppel is applied is when the signatory to the contract alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.")

Based on Plaintiffs' numerous allegations of joint misconduct by all named Defendants, the Court holds that Plaintiffs are equitably estopped from avoiding arbitration when they have asserted Defendants engaged in substantially interconnected and concerted misconduct. Each Plaintiff is a signatory to an arbitration agreement with at least one Defendant. Because Plaintiffs contend Defendants acted in concert to deny Plaintiffs their rights to statutorily determined compensation, the Court holds they must arbitrate their claims against the movants via arbitration as set forth in the Mandatory Arbitration of All Claims Policy. Plaintiffs assert that Defendants dispute they are joint employers but for estoppel purposes, Plaintiffs cannot assert their claims under the FLSA and Ohio law based on a joint

employer theory in their Complaint but then challenge their joint employer allegations in order to defeat arbitration.

The Court does not agree with Plaintiffs that a better course would be to grant conditional certification, send notice and then compel arbitration of those claimants who have arbitration agreements. Plaintiffs rely on *Taylor v. Pilot Corp.* 697 F. Appx. 854 (6th Cir. June 19, 2017) wherein the Sixth Circuit held it lacked jurisdiction to review a conditional certification order in Plaintiff's FLSA action under the FAA which allows for immediate appeals of denial of stays. Unlike the case before the Court, the Sixth Circuit in *Taylor* found that no plaintiff had signed an arbitration agreement and therefore, the Sixth Circuit lacked jurisdiction under the FAA to entertain an interlocutory appeal. Because each Plaintiff in this case did sign an arbitration agreement with at least one Defendant, *Taylor* has no precedential nor persuasive authority because its facts are distinct from those before the Court.

The Court, having determined that Plaintiffs' must submit their claims against movants to binding arbitration, must now determine whether to stay or dismiss the action. Defendant Constellation has not moved to compel arbitration. Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2003). Consistent with this command from Congress, the Court will stay the present proceeding until arbitration is complete.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion to Compel Arbitration (ECF # 16) and orders Plaintiffs to arbitrate their claims with movants. Because

Plaintiffs' Amended Motion for Evidentiary Hearing or Trial (ECF # 26) is untimely, it is denied.  Finally, because Plaintiffs' waived their right to assert their claims collectively, Plaintiffs' Motion for Class Certification (ECF # 9) is denied as applied to the movants.  The remaining claims are stayed and the case is removed from the active docket.

    IT IS SO ORDERED.

DATE: 8/8/2019                       /s/Christopher A. Boyko
                                         CHRISTOPHER A. BOYKO
                                         United States District Judge